* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Hall. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and that the Commission has jurisdiction over the parties and over the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Employee-plaintiff was injured by accident, within the course and scope of employment.
4. The Employer, TWL, Inc., is, and was, at all times relevant to the claims set forth herein, an employer, as that term is defined by the North Carolina Workers' Compensation Act, and subject to the provisions of the Act.
5. Canal Insurance Company's notice of cancellation was not given to the employer by registered or certified mail, return receipt requested.
6. Plaintiff's average weekly wage is $580.58, yielding a compensation rate of $387.24 per week.
7. The medical records of plaintiff are identified as Exhibit A to the Pre-Trial Agreement, and are admissible without further foundation or proof.
8. Plaintiff's medical bills are also attached hereto as Exhibit B and those bills are subject to a determination by the Industrial Commission that medical treatment arose out of and was related to plaintiff's alleged workers' compensation claim and that the treatment was reasonably necessary to effectuate a cure, give relief, or lessen the period of disability.
9. Plaintiff's claim was accepted by defendant-employer by the payment of indemnity benefits and that the medical treatment received by plaintiff, as set out in Exhibits A and B, was necessitated by the work-related injury sustained and that all medical records and attendant billing is admitted into evidence, without the necessity of post-hearing depositions of physicians.
10. The parties stipulate that plaintiff's date of injury is January 31, 2003.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On January 31, 2003, plaintiff was involved in an automobile accident near Richmond, Virginia. At the time of the accident, plaintiff was an employee of TWL, Inc. (hereinafter, TWL) and was in the process of delivering goods for TWL. Plaintiff's accident occurred while he was within the course and scope of his employment, and arose out of his employment with TWL.
2. As a result of the accident, plaintiff suffered serious injuries, including brain injury and resulting hemorrhage, pulmonary collapse, pneumonia, closed fracture to the patella, closed fracture to the base of the metacarpal bone, tear in the medial cartilage/meniscus of the right knee, bimalleolar fracture, closed fracture of the facial bones, and orbital hemorrhage.
3. TWL admits that plaintiff suffered a compensable injury and paid plaintiff temporary total disability benefits in the amount of $387.24 per week since October 31, 2003.
4. On or about October 30, 2003, plaintiff and defendants TWL and Robert Locklear entered into a mediated settlement agreement, which provided that TWL and Robert Locklear would pay plaintiff $14,715.12 on or before December 31, 2003, said amount representing temporary total disability benefits due to plaintiff from January 31, 2003 through October 31, 2003.
5. On or about July 10, 2002, plaintiff suffered a compensable injury to his right knee. Defendant Canal subsequently accepted the claim and entered into a mediated settlement agreement with Plaintiff in the amount of $28,000.00 on October 30, 2003. Pursuant to the settlement agreement, defendant Canal paid directly to plaintiff almost $21,000, and $7,000 to Plaintiff's counsel.
6. Plaintiff's prior workers' compensation claim for his right knee, I.C. No. 296360, was paid under the insurance policy issued by Canal to TWL with effective dates of March 20, 2002 through March 20, 2003.
7. In March 2000, TWL procured workers' compensation insurance with Canal. The policy was issued with effective dates of March 20, 2002 through March 20, 2003.
8. The payment plan identified in Canal's insurance policy required an initial payment or a "new deposit" of $14,776.00 to be paid on or about March 20, 2002, with monthly installment payments commencing on April 20, 2002 in the amount of $4,935.00. The final installment payment was due on December 20, 2002.
9. TWL made the "new deposit" payment and all installment payments through approximately mid-November 2002. The premium payments have never been refunded or returned to TWL. On November 25, 2002, Patty Watts, a member of the accounting department at Golden Isle Underwriting, Inc., Canal's managing agent, prepared and sent a letter to TWL thanking TWL for its payment of $4,935.00, which was applied toward TWL's premium. Ms. Watts' letter further states that TWL's policy will be cancelled on December 7, 2002 and remains cancelled due to "underwriting reasons."
10. On September 18, 2002, a "NOTICE OF CANCELLATION OF INSURANCE" was prepared by Canal. The Notice of Cancellation states that TWL's workers' compensation insurance policy with Canal Insurance would be cancelled effective December 7, 2002 for "underwriting reasons."
11. TWL received actual notice of the attempted cancellation through its broker, BH Insurance Services, Inc., and immediately attempted to procure additional workers' compensation insurance.
12. The owner of TWL, Robert Locklear, testified that he was not aware of any particular law or statute governing the appropriate and lawful method of cancellation, and assumed the policy was being cancelled effective December 7, 2002.
13. Cancellation of a workers' compensation insurance policy prior to the date of its expiration is governed by N.C. Gen. Stat. § 58-36-105. N.C. Gen. Stat. § 58-36-105(a)(1)(10) provides specific grounds for terminating a workers' compensation policy prior to the expiration of the term or anniversary date stated in the policy. The competent testimony before the Commission indicates none of the ten enumerated reasons for permitting premature cancellation of a workers' compensation policy were applied at the time of the attempted cancellation. The only competent evidence at the hearing of this matter was that Canal issued the Notice of Cancellation because TWL had high losses since the commencement date of the policy. An increase in losses is not one of the ten enumerated reasons permitting cancellation prior to the expiration of the term of the insurance policy.
14. N.C. Gen. Stat. § 58-36-105(b) provides the specific method for terminating a workers' compensation policy and states that a cancellation is not effective unless written notice of cancellation has been given by registered or certified mail, return receipt requested, to the insured not less than 15 days before the proposed effective date of cancellation. The statute further requires that the notice state the "precise reason for cancellation." The statute specifically states that whenever notice of an intention to cancel is required to be given by registered or certified mail, no cancellation by the insurer shall be effective unless and until such method is employed and completed.
15. Defendant Canal did not send the Notice of Cancellation to TWL by registered or certified mail, return receipt requested. The Notice of Cancellation does not state the "precise reason for cancellation."
16. Canal's Notice of Cancellation does not comply with N.C. Gen. Stat. § 58-36-105(b) and thus did not effectively cancel the insurance policy issued by Canal to TWL with effective dates March 20, 2002 through March 20, 2003.
17. At the time the Notice of Cancellation was sent to TWL, none of the ten enumerated reasons set forth in N.C. Gen. Stat. §58-36-105(a) applied, and for that reason, the Notice of Cancellation is also not effective.
18. As a result of defendant Canal's failure to comply with N.C. Gen. Stat. § 58-36-105(a) and (b) in its attempt to cancel TWL's policy, the policy remained in full force and effect through its expiration date, March 20, 2003.
19. On the date of plaintiff's injury, which is the subject matter of this claim, January 31, 2003, TWL had in effect workers' compensation coverage with Canal under policy number WC 1 7068 1.
20. Canal initially denied coverage under the policy on the grounds that its' cancellation was effective December 7, 2002, prior to plaintiff's work-related injury. Canal subsequently admitted that it did not send its notice of cancellation by registered or certified mail, return receipt requested, and thus, at the hearing before the Deputy Commissioner of this matter, abandoned any argument that there was a cancellation of the policy.
21. At the hearing, defendant Canal listed as one of its proposed issues for determination, whether TWL was a foreign corporation that had never obtained a certificate of authority in North Carolina, and thus could not maintain "an action in this North Carolina court." Defendant Canal's reliance on this issue is moot, as TWL received its certificate of authority to transact business in the State of North Carolina on October 18, 2004, one day prior to the hearing. N.C. Gen. Stat. § 55-15-02(a) provides that no foreign corporation transacting business in the State of North Carolina without permission obtained through a certificate of authority shall be permitted to maintain an action or proceeding in any court in the State of North Carolina unless the foreign corporation has obtained a certificate of authority prior to the trial. Defendant TWL obtained a certificate of authority prior to the trial of this matter and defendant Canal's argument must fail.
22. Defendant Canal also lists as an issue in the pre-trial order whether or not Robert Locklear and/or TWL had actual notice of Canal Insurance's December 7, 2002 cancellation of the workers' compensation policy. TWL and Robert Locklear admit that they had actual notice of the cancellation. However, actual notice of cancellation does not relieve defendant Canal of its legal obligation to comply with N.C. Gen. Stat. § 58-36-105 in connection with canceling the policy. Defendants' actual knowledge that Canal was attempting to cancel the policy has no legal effect on the actual cancellation of the policy under N.C. Gen. Stat. § 58-36-105.
23. Defendant Canal also contends that TWL made false and material misrepresentations in its application for an insurance quote with Canal, and seeks to void the entire policy abinitio. Specifically, Canal contends that TWL did not truthfully answer questions 2, 5, 6, and 18 on its application.
24. Question 2 asks whether TWL's operation involves the storage, treating, discharging, applying, disposing, or transporting of hazardous material "e.g., landfills, wastes, fuel tanks, etc."
25. Defendant's owner, Robert Locklear, interpreted this question to be limited to the examples set forth in the parenthesis in the question, to include landfills, wastes, and fuel tanks. There is no evidence that, at the time of the application, TWL transported waste to landfills or transported fuel tanks.
26. At the time TWL signed the application, it did transport certain hazardous materials that require stickers on the load to identify the load as containing hazardous material.
27. On July 24, 2002, Diane Pendleton of Southern Inspection Service visited the employer's facility to conduct a risk assessment. Southern Inspection Services was hired by Canal's general managing agent, Golden Isles Underwriters. Golden Isles paid Southern Inspection Services for providing the inspection service and subsequent report. Ms. Pendleton completed her report on July 31, 2002. The report clearly set forth that 1) TWL was using subcontractors in its business; 2) that TWL was operating a repair shop in its business; 3) that TWL was transporting hazardous material in connection with operating its business; and 4) that the owner of TWL, Robert Locklear, also owned a separate and distinct company called KNM Logistics.
28. At the latest, this report was provided to Golden Isles on September 13, 2002.
29. Following receipt of this report, Canal continued to receive and accept premiums from Robert Locklear and in fact paid a separate and distinct claim involving plaintiff after receiving this information.
30. Ms. Pendleton testified that she had no further contact or discussions with Golden Isles after submitting the report, and had no knowledge of the cancellation of the policy, or the reasons for the cancellation of the policy until being contacted about this pending action.
31. Ms. Pendleton testified that the recommendations set forth in her July 31, 2002 report were not significant enough to merit contacting Golden Isles immediately to address any particular risk hazard.
32. Ms. Pendleton testified that she had been performing these types of inspections for insurance companies for approximately 15 years and that it was not unusual to find that the information on the application for insurance is not consistent with some of the actual activities being engaged in by the employer.
33. Ms. Pendleton had a copy of TWL's insurance application prior to her inspection and, as an agent of Golden Isles, who was the managing agent of Canal, was aware that there were inconsistencies with the information on the application for insurance and the actual practices at TWL as early as July 24, 2002.
34. Ms. Pendleton's knowledge and information with respect to the operations of TWL, and any possible inconsistencies in TWL's operations and the information in its application for insurance are imputed to the general managing agent of Canal, and in turn imputed to Canal, as Ms. Pendleton was acting as their agent in connection with the inspection and preparation of the subsequent report.
35. Ms. Pendleton did not personally determine whether or not the employer had complied with the recommendations of Southern Inspection Services after the July 24, 2002 inspection. Ms. Pendleton had no personal knowledge as to whether or not her recommendations were followed by TWL.
36. Patsy McKee testified that she is an employee of Osteen Adjusting and that Osteen Adjusting handled all claims on behalf of Canal. Osteen was not involved in the attempted cancellation of Canal's policy. According to Ms. McKee, plaintiff's claim was denied because, according to Osteen's clerical department, the policy had been cancelled and was not in effect on the date of plaintiff's injury. Osteen did not make any effort to determine whether or not the policy was lawfully cancelled, but rather relied on Osteen's clerical department to deny the claim.
37. Ms. McKee, on behalf of Osteen, denied the claim solely on the grounds that there was allegedly no coverage in effect at the time of the injury, and knows of no facts or evidence that would indicate that if coverage was in effect, the claim would not be compensable under the Workers Compensation Act.
38. According to the Form 61 executed by Ms. McKee, the claim was not denied because of any alleged material misrepresentation on the part of the employer in connection with the insurance application.
39. Ms. McKee was not aware of any evidence to indicate that there were material misrepresentations in the insurance application at the time she executed the Form 61.
40. Ms. McKee was the adjuster who negotiated and settled, on behalf of Osteen and Canal, plaintiff's first Workers' Compensation claim. This settlement took place on October 30, 2003. At the time of the settlement, Ms. McKee had not been notified by Canal or Golden Isles that there was any issue regarding any material misrepresentation in employer's insurance application.
41. No representative of Osteen testified that any representations in the employer's insurance policy were false or, even assuming they were false, were material and relied upon by Golden Isles or Canal.
42. After the coverage was written, Canal sent Dianne K. Pendleton of Southern Inspection Service to TWL's facility in Pembroke, North Carolina, to inspect the facility and prepare a workers' compensation/loss prevention field survey report. TWL provided Ms. Pendleton access to the TWL facility, as well as documents and records pertaining to TWL's business. Ms. Pendleton performed her inspection on July 24, 2002 and prepared a report on July 31, 2002. In the report, Ms. Pendleton noted that "Hazardous materials such as cleaning compounds and carpet cleaning solutions are also transported and 75% of the drivers are Hazmat certified." In the RECOMMENDATIONS portion of the report, one of the stated recommendations was to "provide EPA/HAZMAT certification." Notwithstanding the fact that this report was submitted to Canal upon its completion, Canal did not notify TWL that it was Canal's position that there had been a material misrepresentation in the application and Canal continued to collect and keep premiums under the policy and paid a separate claim to the plaintiff under the policy.
43. Defendant Canal also contends that there was a material misrepresentation in TWL's application on question 5, which states, "is applicant engaged in any other type of business?" Defendant TWL answered "no." TWL has at its facility a repair shop in which it repairs its own trucks and trailers, as well as others. During Mr. Pendleton's inspection, she observed the repair shop and made specific note of the existence of the repair shop in her report.
44. Upon receiving the report, Canal did not contact TWL or take the position that, because TWL was operating a repair shop at its facility, TWL had made a false and material misrepresentation on its application concerning other businesses. Canal continued to accept and keep premiums paid by TWL after receipt of the Ms. Pendleton's report.
45. Canal also contends that TWL made a material and false misrepresentation to question 6 of the application, which asks whether any "subcontractors" are used. TWL answered that question "no." According to TWL's owner, Robert Locklear, he answered the question "no" because, although he was using subcontractors at the time, none of them would fall under this workers' compensation policy and thus he did not believe that the question should have been answered "yes."
46. In Ms. Pendleton's report, she makes specific reference to the fact that TWL has subcontractors and in her recommendations portion of the report, recommends that TWL "provide records of certificates of insurance for subcontractors." Notwithstanding the fact that this report was sent to Canal, Canal never contacted TWL to indicate that it was Canal's position that TWL had made a material misrepresentation on the policy and, after receipt of the report, continued to accept and keep TWL's premiums under the policy and pay claims under the policy.
47. Canal also contends that TWL failed to answer question 18 truthfully. Question 18 asks whether or not, within a three-year period, TWL had any prior coverage declined/cancelled/non-renewed. Prior to the issuance of the Canal policy, TWL had workers' compensation through Connecticut Indemnity. Connecticut Indemnity issued a Notice of Non-Renewal of the policy to TWL, effective March 3, 2002. Connecticut Indemnity did not renew TWL's policy because the company was no longer writing any workers' compensation business in the State of North Carolina. Harry Grubbs, the owner of BH Insurance Services in Winston-Salem, North Carolina, testified that it was common knowledge in the insurance business that Connecticut Indemnity was no longer writing coverage in North Carolina at the time TWL applied for its workers' compensation insurance with Canal. Mr. Grubbs further testified that Canal would have known from looking at TWL's application that its prior workers' compensation carrier was Connecticut Indemnity, and that Connecticut Indemnity was no longer writing workers' compensation coverage in the State of North Carolina.
48. Mr. Grubbs testified that the decision of insurance companies such as Canal on whether or not to bind workers' compensation coverage depends on the proposed insured's loss history and that the questions in the two-page application for insurance have little or no influence on the insurance company's decision to write coverage.
49. Canal failed to present any evidence at the hearing that, from Canal's perspective, any of the alleged misrepresentations or false statements made in the application were material or influenced the judgment of the underwriter in making the contract, estimating the degree or character of the risk, or fixing the rate of premium.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Defendant Canal Insurance Company failed to produce evidence that any alleged misrepresentation or false statement was material under N.C. Gen. Stat. § 58-3-10.
2. Even if N.C. Gen. Stat. § 58-3-10 applied and defendant Canal Insurance Company had produced evidence of a material misrepresentation, the doctrine of waiver and estoppel prohibits Canal from voiding the policy. Canal has admitted, through its course of conduct, an obligation to honor plaintiff's claim and has waived its right to challenge the validity of the contract for insurance.
3. Plaintiff suffered a compensable work-related injury within the course and scope of his employment and arising out of his employment, on or about January 31, 2003. N.C. Gen. Stat. § 97-2.
4. Plaintiff is entitled to the receipt of temporary total disability payments pursuant to N.C. Gen. Stat. § 97-29 from January 31, 2003 to the present, and continuing until further order of the Commission, to be paid by defendant Canal Insurance Company.
5. Defendant Canal Insurance Company shall pay all of plaintiff's outstanding medical bills related to plaintiff's medical treatment, including but not limited to, those bills attached as Exhibit B to the Pre-Trial Order. Defendant Canal Insurance Company shall provide plaintiff with all other benefits required by the North Carolina Workers' Compensation Act, including future medical treatment. N.C. Gen. Stat. § 97-25.
6. Defendant Canal Insurance Company shall reimburse defendant-employer for any payments of temporary total disability made to plaintiff in this matter since mediation. N.C. Gen. Stat. § 97-86.1(b).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant Canal Insurance Company shall pay plaintiff temporary total disability payments from January 31, 2003 to the present, less any amount already paid, and continuing until further order of the Commission, subject to an attorney's fee set out below.
2. Defendant Canal Insurance Company shall pay all medical expenses incurred by plaintiff as a result of the compensable injury on January 31, 2003 that tend to effect a cure, give relief, or lessen the period of plaintiff's disability.
3. A reasonable attorney's fee in the amount of 25% of the compensation benefits due under Paragraph 1 of this Award and any accrued amount is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sum due plaintiff under Paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiff's counsel. In regard to future total disability compensation, plaintiff's attorney shall receive every fourth check.
4. PH-1134 is held in abeyance until all appeals have been exhausted and this case has a final decision.
5. Defendant Canal Insurance Company shall reimburse defendant-employer for any temporary total disability payments made since the mediation in this matter.
6. Defendant Canal Insurance Company shall pay the costs.
This the __ day of April, 2006.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER